1
2
3
4
5
6
7      **IN THE UNITED STATES DISTRICT COURT**

8      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10     GOLDEN VALLEY GRAPE JUICE                    CASE NO. CV F 09-1424 LJO GSA
       AND WINE, LLC,
11                                                  **ORDER ON THIRD PARTY DEFENDANT'S**
                          Plaintiff,               **MOTION TO DISMISS FOR LACK**
12                                                  **OF PERSONAL JURISDICTION AND**
              vs.                                   **CHANGE OF VENUE**
13
       CENTRISYS CORPORATION,
14
                          Defendants.
15     _____/

16     CENTRISYS CORPORATION,

17            Third Party Plaintiff,

18            vs.

19     SEPARATOR TECHNOLOGY
       SOLUTIONS PTY LTD,
20
                    Third-Party Defendants.
21     _____/

22                          **INTRODUCTION**

23            This dispute arises from a contractual agreement between plaintiff Golden Valley Grape Juice

24     and Wine, LLC ("Golden Valley") and defendant Centrisys Corporation ("Centrisys").  Golden Valley

25     purchased a centrifuge from Centrisys for juice and wine clarification.  (Doc. 1, Amended Complaint

26     ¶5.)  Third Party defendant, Separator Technology Solutions PTY Ltd, ("STS") manufactured the

27
28
                                                    1

1  centrifuge.[1]

2      By notice filed on October 13, 2009, STS filed a motion to dismiss for lack of personal

3  jurisdiction.  Centrisys filed an opposition on November 2, 2009.  STS filed a reply on November 12,

4  2009.  The Court then asked for supplemental briefing from Centrisys for issues raised in the STS reply

5  brief.  Centrisys filed a supplemental brief on December 1, 2009.  The hearing was VACATED pursuant

6  to Local Rule 230(g).  Having considered the moving, opposition and reply papers, as well as the Court's

7  file, the Court issues the following order.

8                                    **FACTUAL OVERVIEW**

9      On April 2, 2008, Golden Valley (a California LLC) purchased a STS200 centrifuge (the

10  "centrifuge") from Centrisys, a Wisconsin Corporation, for use in Golden Valley's grape juice

11  applications.  STS (an Australian business entity) manufactured the centrifuge and sold it under a

12  separate agreement to its then distributor, Centrisys.  STS, generally, builds centrifuges and then sells

13  the centrifuges to other businesses for eventual sale in the stream of commerce to end users.  (Doc. 16,

14  Whittington Decl. ¶2.)

15      STS supervised the installation and start up of the STS200 at Golden Valley.  (Doc. 23,

16  Whittington Decl. ¶7.)  STS was engaged by Centrisys to perform the start-up.  (Id.) As part of the STS-

17  Centrisys agreement, STS agreed to provide a 12-month warranty, and to maintain a local inventory of

18  centrifuge spare parts, and further obligated itself to provide "local after-sales service and technical

19  support directly from [its] California office, in co-operation with … [CENTRISYS]."  (Doc. 22, Decl.

20  Mahoney Exh. A, p.2.)  STS contends, however, that the contract between STS and Centrisys provides

21  that Centrisys is the repairer and servicer of the centrifuge.  (Doc. 23, Whittington Decl. ¶6.)

22      After installation of the centrifuge and startup in September 2008, the centrifuge did not perform

23  to specifications.  (Doc. 1, Amended Complaint ¶7.)  Golden Valley notified Centrisys of the non-

24  _____

25      [1] The parties to this motion incorrectly refer to themselves as "cross plaintiff" and "cross defendant."  The claim
    between Centrisys and STS is a third party complaint pursuant to Rule 14.  ("A defending party may, as third-party plaintiff,
26  serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.") Defendant
    Centrisys is a "defending party" who claims that a "nonparty," here STS, is liable to it on plaintiff's claim.  STS was not
27  named in plaintiff's complaint, and therefore is a nonparty not a "coparty." *Cf.* Rule 13 ("A pleading may state as a crossclaim
    any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of
28  the original action . . .")

                                            2

conformity.  According to the amended complaint, "[d]efendant and the manufacturer repeatedly assured Plaintiff that the problems would be cured."   (Doc. 1-2, Amended Complaint ¶8.)  Golden Valley eventually filed this action against Centrisys.  Centrisys then filed a third party complaint against STS. Centrisys alleges claims against STS for: (1) indemnity, (2) contribution, and (3) declaratory relief.

## ANALYSIS AND DISCUSSION

### A.    Motion to Dismiss Pursuant to Rule 12(b)(2)

STS moves to dismiss this action on the grounds that the Court lacks personal jurisdiction over STS pursuant to Rule 12(b)(2).

Fed.R.Civ.P. 12(b)(2) empowers a defendant to challenge a complaint "for lack of jurisdiction over the person." A district court's determination whether to exercise personal jurisdiction is a question of law.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).   Although defendant is the moving party on the motion to dismiss, plaintiff is the party who invoked the court's jurisdiction.  Therefore, plaintiff bears the burden of proof on the necessary jurisdictional facts; e.g., the existence of "minimum contacts" between defendant and the forum state.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d at 1019.  When defendant's motion to dismiss is made as its initial response and the court decides the motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing that personal jurisdiction exists. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). A "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).   The complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in plaintiff's favor.  *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1129.  To defeat plaintiff's prima facie showing of jurisdiction on a Rule 12(b)(2) motion, defendants must demonstrate the presence of other considerations that would render personal jurisdiction unreasonable.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

### B.    Personal Jurisdiction

Two recognized bases exist for personal jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify

1  the exercise of jurisdiction over the person in all matters; and (2) "specific" or "limited" jurisdiction

2  which arises out of the defendant's contacts with the forum giving rise to the subject of the litigation.

3  *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).

4  Absent a traditional basis for jurisdiction (presence, domicile or consent), due process requires that the

5  defendant have "certain minimum contacts with (the forum state) such that the maintenance of the suit

6  does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

7  *Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

8       **1.       General Jurisdiction**

9       STS argues that the Court does not have general jurisdiction because STS does not have

10  continuous and systematic contacts with California.  STS is an Australian company and is domiciled in

11  Australia.  Centrisys argues that STS had substantial, continuous and systematic contacts with California

12  such that general jurisdiction is warranted.

13       It is the nature and extent of the contacts, not a mechanical checklist, that determines whether

14  defendant's activities are "substantial" or "continuous and systematic."  Longevity, continuity, volume,

15  economic impact, physical presence, and integration into the state's regulatory or economic markets are

16  among the indicia of such a presence. *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th

17  Cir. 2006), *cert. denied,* 549 U.S. 1076 (2006).  For general (unlimited) jurisdiction, a higher level of

18  "contacts" with the forum state is required to support local jurisdiction; the "fair play" concept.  *See*

19  *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  This broad

20  basis for jurisdiction is usually limited to large companies doing a large amount of business locally on

21  a regular basis and such companies rarely contest personal jurisdiction.  *See Amoco Egypt Oil Co. v.*

22  *Leonis Navigation Co., Inc.,* 1 F.3d 848, 851, fn. 3 (9th Cir. 1993).

23       Here, Centrisys offers evidence that STS has "systematic" contacts with California.  Centrisys

24  presents evidence the STS sold two other centrifuges to two different wineries in California.  Centrisys

25  presents evidence that STS represents to its customers that it has a sales office in California and has an

26  agent for service of process in California, located in San Francisco, California.  Indeed, the evidence

27  shows that the agent for service of process in California is the STS declarant in its moving papers,

28  Ashley Whittington.  (Doc. 21-3, Cho Decl., Exh "C".)  Mr. Whittington is the agent for service at 1760

4

Pacific Ave, San Francisco and maintains a telephone number with a "559" area code.  (Doc. 21-3, Cho Decl. ¶5.)  Centrysis presents other "evidence" of systematic contacts with California: (a) goods are shipped directly to the California sales office, (Doc. 22-3, Exh. B), (b) Mr. Whittington is regularly in California, and ( c) STS is registered with the California Secretary of State.[2]

This evidence does not show contacts which are systematic, and of a higher level of contacts with California which warrant imposing jurisdiction for any and all activity.  The evidence does not show large scale contacts by STS with California such that jurisdiction for any type of activity in California is warranted.  Thus, the Court finds that plaintiffs have failed to carry their burden that general jurisdiction exists over STS.

**2.     Limited Jurisdiction**

The focus then turns to whether this Court has "specific" or "limited" jurisdiction arising from STS's contacts with California giving rise to the subject of this action.

STS argues that specific jurisdiction does not exist because it did not purposefully avail itself of California law.  STS argues that it is the manufacturer of the centrifuge which it sold to defendant Centrisys, a Wisconsin corporation.  Centrisys, in turn, then sold the centrifuge to Golden Valley in California. STS argues that it is not a party to the sales agreement between Golden Valley and Centrisys. STS did not agree to repair or service the centrifuge.

Even if a nonresident defendant's contacts with the forum state are not sufficiently "continuous and systematic" for general jurisdiction, the nonresident defendant may be subject to jurisdiction on claims related to its activities or contacts there.  Whether limited jurisdiction lies "turns on the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  The Ninth Circuit uses a three-part test to determine whether the district court may exercise specific jurisdiction over a nonresident

---

[2] For ease of reference, the parties and the Court refer to the third party defendant as "STS."  In its reply brief, however, STS presents evidence that STS is actually "STS Au," an Australian company, and that STS Au has a California subsidiary, "STS US."  STS argues that the "systematic" contacts with California are by the subsidiary STS US, which Centrisys has confused with "STS Au."  The subsidiary  is not the contracting party with Centrisys.  The contracting party, and manufacturer of the centrifuge, is STS Au, the Australian company. *See Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 459 99th Cir. 2007) (where a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.)  Accordingly, for this motion, the Court does not consider the contacts of STS US to determine minimum contacts.

defendant:

> (a)  The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections;
>
> (b)  The claim must be one which arises out of or results from the defendant's forum-related activities, and
>
> ( c)  Exercise of jurisdiction must be reasonable.

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The Court evaluates each requirement of the three part test.

### (a)      Purposeful availment

The "purposeful availment" requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1129 (9th Cir. 2004).

As to a defendant's purposefully directed activities, the Ninth Circuit explained in *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988):

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff.  In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state.

The requirement that "conduct is expressly aimed" at the forum state is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007).  In contract cases, the Ninth Circuit typically inquires whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummates a transaction" in the forum, focusing on activities such as delivering goods or executing a contract.  *Menken v. Emm*, 503 F.3d at 1057.  A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004).

The Ninth Circuit, however, is guided by the Supreme Court's admonition that the formation of

a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction. *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")  A lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California.  *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) (the consummation of the sale via eBay is a distraction from the core issue: This was a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no "substantial connection" or ongoing obligations there), *cert. denied*, 129 S.Ct. 1318 (2009); *Travelers Health Ass'n v. Commonwealth of Va.*, 339 U.S. 643, 647, 70 S.Ct. 927 (1950) (purposeful availment found if "business activities reach out beyond one state and create continuing relationships and obligations with citizens of other states.")  Purposeful availment requires a finding that the defendant performed some type of affirmative conduct which allows or promotes the transaction of business within the forum State.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  The court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing."  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990).

STS argues it did not have any contacts with California. To demonstrate an absence of minimal contacts with California, STS provides evidence that it:

1.  It is an Australian Company.

2.  It has its principal place of business in Australia.

3.  It is the manufacturer of the centrifuge.

4.  It sold the centrifuge to Centrisys, a Wisconsin corporation.

5.  It is not a party to the sales agreement between Golden Valley and Centrisys.

6.  It did not agree to repair or service the centrifuge.

(Doc. 16, Whittington Decl. ¶¶4-6.)

Centrisys, however, argues that STS has purposefully availed itself in California for this particular transaction.  Centrisys presents evidence that Mr. Whittington and Centrisys personally met with Golden Valley representatives to discuss the STS200 centrifuge before the consummation of the

sale. STS shipped the centrifuge directly to Golden Valley in Madera, California. (Doc. 20, Opposition p.8.) Once there, STS supervised the installation and start-up of the centrifuge at Golden Valley. Centrisys offers evidence that STS offered "local after-sales service and technical support directly from our Californian office . . ." (Doc. 22, Exh. A.) Centrisys therefore argues that STS actively participated in the sale of the centrifuge to Golden Valley.

The evidence here establishes that STS purposefully availed itself of the privilege of doing business in California. The evidence establishes that the purpose of the contract with Centrisys was to effectuate the sale with Golden Valley. STS sold the centrifuge to Centrisys with the knowledge and intent that Centrisys would sell the centrifuge to Golden Valley. STS knew the purpose of the contract and actively participated in consummation of the deal. STS shipped the equipment to California for installation at Golden Valley. The centrifuge was not shipped to Centrisys in Wisconsin, then shipped to California.

Indeed, STS's representative appeared in California and assisted in negotiating the deal and thereafter supervised the installation and start up of the equipment. Following the start up, STS provided ongoing warranty support. STS contends that it supervised the installation and start-up at the request of Centrisys and as the agent of Centrisys and that it provided warranty support to Centrisys. (Doc. 16, Whittington Decl. ¶5.) STS nonetheless had contacts with California for the purpose of effectuating the sale and success for the installation and operation. Further, STS's contract with Centrisys was for the specific purpose of installing equipment in California. The sale to Centrisys was not such that STS washed its hands of the centrifuge and Centrisys could sell to whomever Centrisys chose. The specific purpose of the STS-Centrisys contract was to sell the centrifuge to Golden Valley in California, for which STS actively participated.

STS provided support services for the centrifuge, which would necessarily require contracts with California. The actual contacts are the relevant issue for determining minimum contacts. STS entered into a contract designed to have specific effects in California and the claims arise from those effects. In *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 377 (5th Cir.2003), the Fifth Circuit addressed a contract that was designed to cause specific effects in the forum. The Italian defendant had accepted a contractual obligation to ship a reactor from Italy to Louisiana, where a third party would be obligated

1   to unload the reactor. *Id.* After the defendant had transported the reactor, and while it was being

2   unloaded from the ship, an onboard shipping crane broke and the reactor was damaged.  *Id.* The Fifth

3   Circuit addressed the question of whether jurisdiction over the Italian defendant was appropriate, and

4   concluded that it was sufficient that the defendant had agreed "to secure a vessel with a satisfactory

5   onboard loading crane that it knew would be used to unload cargo in Louisiana." *Id*. At 379. Because

6   it had entered into a contract that was designed to cause specific effects in Louisiana, the defendant could

7   not "claim that its contact with Louisiana was merely fortuitous, random, or attenuated after it entered

8   into a contract specifying that state as the point of destination." Id. The court contrasted the facts before

9   it with a hypothetical situation in which the defendant "had agreed to transport the reactor from Italy to

10  Mexico, but because of bad weather, the [ship] unexpectedly was forced to dock in the Port of New

11  Orleans...." *Id.* at 379 n. 2. In that case, there would be no reasonable expectation of being haled into

12  court in Louisiana, and therefore no specific jurisdiction. *Id.*

13          Here, it is not as if STS sold the centrifuge to Centrisys and then washed its hands of the

14  transaction.  STS provided assisted in the sale, shipped the good to Golden Valley, and provided ongoing

15  warranty support and service to ensure the transaction was successful.  Thus, STS purposefully availed

16  itself of the privilege of doing business in California.

17                    **(b)      Claim Arises out of Activities in California**

18          Limited jurisdiction means jurisdiction is limited to causes of action arising out of or related to

19  the nonresident's forum-related activities.  *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th

20  Cir. 1992); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992).  A "but for" test is used for determining

21  whether the claim "arises out of" the nonresident's forum-related activities.  If plaintiff would not have

22  suffered loss "but for" defendant's forum related activities, this element is satisfied.  *Ballard v. Savage*,

23  65 F.3d 1495, 1500 (9th Cir. 1995).

24          Here, the activities in California give rise to the litigation.  While Golden Valley was Centrisys'

25  customer and Centrisys was STS's customer, the centrifuge made its way to California with STS's

26  cooperation, support and assistance.  *See Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th

27  Cir. 1969) (English coach manufacturer subject to suit in Hawaii because it sold coach to chassis

28  manufacturer with knowledge that coach was destined for Hawaii).  There is evidence that Mr.

Whittington, along with Centrisys, made an "initial presentation" to Golden Valley, which was about a month before the sale consummated.  This evidence shows that STS was involved in successful completion of the sale. (Doc. 16, Whittington Decl. ¶4; Doc. 20, Opposition p. 8 n.3.) Centrisys' claims arise from forum-related activities through which defendant purposely availed itself of California as a forum.

Any factual conflicts in the parties' declarations must be resolved in plaintiff's favor.  *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1129 ("conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.")  Factual contradictions are resolved in Centrisys' favor.  Accordingly, the facts show the claims arise out of defendants' conduct in California.

### ( c) Reasonableness

If the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken v. Emm*, 503 F.3d at 1057.  If plaintiff has satisfied the first two prongs of the three prong test for specific jurisdiction, defendant must therefore make a "compelling case" that exercise of jurisdiction would be unreasonable.

A "highly realistic" approach is required to determine whether a nonresident party is subject to local jurisdiction.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-478, 105 S.Ct. 77 (1985).  It must appear that the exercise of jurisdiction by local courts in the particular case would "comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477–478. Turning to reasonableness to exercise personal jurisdiction, the Ninth Circuit Court of Appeals has developed a seven-factor test:

1.   The extent of defendant's purposeful interjection into the forum state;

2.   The burden on defendant of defending in the chosen forum;

3.   The extent of conflict with the sovereignty of defendant's state;

4.   The forum state's interest in adjudicating the dispute;

5.   The most efficient forum for judicial resolution of the dispute;

6.   The importance of the forum to plaintiff's interest in convenient and effective relief; and

1      7.      The existence of an alternative forum.

*Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d 1482, 1487 (9th Cir. 1993).  None of these factors is dispositive by itself.  They all must be balanced against the others.  *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

### *Purposeful Interjection*

This factor is co-extensive with the purposefully directed activities analysis discussed above.  When there are only attenuated contacts with the forum, the "slightness of the purposeful interjection 'militates against' a finding of the reasonableness of jurisdiction."  *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981); *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F.Supp. 743, 748 (C.D. Cal. 1995).  "Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Core-Vent Corp.*, 11 F.3d at 1488.  There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction.  *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1115 (9th Cir. 2002).

STS does not argue this factor.  For purpose of the balancing of factors, the Court considers this factor neutral.

### *Burden on Defendant*

This factor examines how difficult it will be for a defendant to travel to the forum state to defend itself.  *Indiana Plumbing*, 880 F.Supp. at 748.  The Ninth Circuit Court of Appeals has commented:

> The law of personal jurisdiction, however, is asymmetrical.  The primary concern is for the burden on a defendant.  *See World-Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564.  If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere.  A defendant has no such luxury.  The burdens on a defendant are of particular significance if, as here, the defendant has done little to reach out to the forum state.

*Marina Salina Cruz,* 649 F.2d at 1272.  *See also Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851-852 (9th Cir. 1993).

STS argues that the burden to litigate in California is high.  STS argues any employee who worked on, supervised, or controlled work on the centrifuge at issue would likely be required to travel

11

from Australia to California to appear at various times during the proceedings.  The travel costs would be enormous.  (Doc. 17, Moving papers, p. 4:21.)

The Court recognizes that it may be expensive and inconvenient for STS to defend itself in California.  But this factor is not dispositive. "[M]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir.1988). Moreover, several factors mitigate the burden in this case. For instance, STS's principal liaison travels to California.  Further, the Court would assist in scheduling events and discovery to coincide with prearranged travel or to minimize the financial impact of travel.  While defending the lawsuit in California would be difficult, it would not be impossible.

The burden on Centrisys to litigate in Australia would be substantially greater. *CoreVent,* 854 F.2d at 1199 (the comparative burdens of litigating in other forums for each party should be determined).  Centrisys has no contacts with Australia.  All of the witnesses pertaining to the performance of the centrifuge would be either in California or in Wisconsin.  Pursuing the indemnity and contribution claims in Australia would be more difficult for Centrisys.

### Conflict with Sovereignty of Australia

STS does not argue that there is any conflicts with Australia's interests.  Therefore, this factor is neutral.

### Forum State's Interest

STS argues that California has little if any interest in adjudicating the dispute as to STS.  STS argues that it is being sued for indemnity, over a contractual obligation with a Wisconsin corporation.  California, however, has an interest in providing effective means of redress for its residents who are damaged. The equipment which is the subject of the litigation and the performance of the equipment at Golden Valley, in California, are the subject of the litigation.  Thus, this factor favors Centrisys.

### Most Efficient Resolution

"In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d at 1489.  Here, presumably, the witnesses and evidence of the alleged performance of the equipment will mostly be in California because the equipment is located in California. STS argues that any employee who worked on, or supervised or

12

1  controlled work on the centrifuge would like be required to travel from Australia to California to appear

2  at various times during the proceedings.  (Doc. 17, Moving Papers p. 4.)

3  This factor weighs more in STS's favor.  Should the proof of the case depend upon the existence

4  of manufacturing defects, then witnesses who manufactured the equipment may be required to testify.

5  Nonetheless, the Court would assist STS to establish procedures to ensure its rights are protected yet

6  minimize the costs of travel and personal appearances.

7  ### Convenience and Effective Relief for Plaintiff

8  This Court is the more convenient and effective forum for plaintiff and Centrisys because the

9  failure of the equipment arose in California. This factor favors Centrisys.

10  ### Existence of an Alternative Forum

11  Centrisys bears the burden of proving the unavailability of an alternative forum.  *Core-Vent*

12  *Corp.*, 11 F.3d at 1490.

13  Centrisys argues that it does not have an alternative forum in Australia.  Liability will require

14  testimony of Golden Valley employees who are beyond the subpoena power of an Australia Court.  The

15  action between STS and Centrisys is derivative of the liability of Centrisys to Golden Valley.

16  The Court finds that this factor is in favor of Centrisys.  California is the only forum for the

17  underlying litigation between Golden Valley and Centrisys.  STS's liability for indemnity or

18  contribution, if any, is derived from the  result of the Golden Valley and Centrisys litigation.

19  Accordingly, this factor is in favor of Centrisys.

20

21  Weighing these seven considerations, the balance of factors does not favor STS. It has not

22  presented a compelling case that the exercise of jurisdiction would be unreasonable. *See e.g.,*

23  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir.1998) ("[W]e conclude that although

24  some factors weigh in [defendant's] favor, he failed to present a compelling case that the district court's

25  exercise of jurisdiction in California would be unreasonable.")  On balance, STS has not presented a

26  compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice

27  and would thus be unreasonable.

28

1    **C.      Motion for Change of Venue pursuant to a Forum Selection Clause**

2            STS argues that STS and Centrisys agreed to resolve any disputes in Australia.  In STS' reply

3    brief, STS submits the "General Conditions" to the STS-Centrisys contract.  STS argues that when STS

4    and Centrisys entered into their contract, the "General Conditions" were part of the contract.  In pertinent

5    part, the "General Conditions" provide for forum selection for Australia.[3]  Centrisys, however, disputes

6    that the "General Conditions" was part of the parties' contract.  Centrisys offers evidence that the

7    "General Conditions" was neither attached to any correspondence nor agreed to be part of the contract.

8    Thus, Centrisys' position is that it never agreed to the General Conditions and thereby never agreed to

9    the forum selection clause.  In short, Centrisys disputes the validity of the contract's clause naming

10   Australia as the forum.

11           A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule

12   12(b)(3), but pleadings need not be accepted as true, and facts outside the pleadings may be considered.

13   *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

14           Here, the parties dispute the formation of the contract and the terms of the contract.  The parties

15   failed to address whether and to what extent an international treaty applies.  International sales contracts

16   are ordinarily governed by a multilateral treaty, the United Nations Convention on Contracts for the

17   International Sale of Goods ("C.I.S.G.").  The parties did not cite the treaty nor address how the

18   provisions of the treaty apply to the dispute in the formation of the contract. Both the United States and

19   the Australia are signatories.  How a contract is "formed" under the applicable Uniform Commercial

20   Code is different than under the treaty.  Accordingly, the Court cannot rule upon the motion to change

21   venue without further briefing.

22           Accordingly, the parties shall file supplemental briefs on the issue of formation of the contract

23   and terms of the contract.  STS shall file its supplemental brief on formation/terms of the contract no

24   later than December 22, 2009.  Centrisys shall file its supplemental brief no later than January 7, 2010.

25   Thereafter, the Court will set a hearing should one be needed.

26

27   _____

28           [3] The forum selection clause states, in relevant part: "Any dispute between the parties shall be finally settled in accordance with laws of Victoria (the jurisdictions hall be the State of Victoria . . ." (Doc. 23, Whittington Decl. Exh. 1, ¶14.)

**CONCLUSION**

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction is DENIED. The motion for change of venue is CONTINUED and is under submission pending the parties filing supplemental briefs.

IT IS SO ORDERED.

**Dated:    December 9, 2009            /s/ Lawrence J. O'Neill            **
UNITED STATES DISTRICT JUDGE

15