**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

GOLDEN VALLEY GRAPE JUICE AND WINE, LLC,

Plaintiff,

vs.

CENTRISYS CORPORATION,

Defendants.
_____________________________________/

CENTRISYS CORPORATION,

Third Party Plaintiff,

vs.

SEPARATOR TECHNOLOGY SOLUTIONS PTY LTD,

Third-Party Defendants.
_____________________________________/

CASE NO. CV F 09-1424 LJO GSA

**ORDER ON THIRD PARTY DEFENDANT'S MOTION FOR CHANGE OF VENUE**

Third Party Defendant Separator Technology Solutions PTY Ltd. ("STS") moves for change of venue pursuant to a forum selection clause. Following the parties' briefing the issue, the Court asked for supplemental briefing from Centrisys Corporation and STS regarding the United Nations Convention on Contracts for the International Sale of Goods. STS filed its supplemental brief on December 22, 2009. Centrisys filed a supplemental brief on January 7, 2010. The motion for change of venue was taken under submission pursuant to Local Rule 230(g). Having considered all of the supplemental briefs, as well as the Court's file, the Court issues the following order.

**FACTUAL OVERVIEW**

This dispute arises from a contractual agreement between plaintiff Golden Valley Grape Juice and Wine, LLC ("Golden Valley") and defendant Centrisys Corporation ("Centrisys"). On April 2, 2008, Golden Valley (a California LLC) purchased a STS200 centrifuge (the "centrifuge") from

Centrisys, a Wisconsin Corporation, for use in Golden Valley's grape juice applications. (Doc. 1, Amended Complaint ¶5.) STS (an Australian business entity) manufactured the centrifuge and sold it under a separate agreement to its then distributor, Centrisys. STS, generally, builds centrifuges and then sells the centrifuges to other businesses for eventual sale in the stream of commerce to end users. (Doc. 16, Whittington Decl. ¶2.)

After installation of the centrifuge and startup in September 2008, the centrifuge did not perform to specifications. (Doc. 1, Amended Complaint ¶7.) Golden Valley notified Centrisys of the non-conformity. According to the amended complaint, "[d]efendant and the manufacturer repeatedly assured Plaintiff that the problems would be cured." (Doc. 1-2, Amended Complaint ¶8.) Golden Valley eventually filed this action against Centrisys. Centrisys then filed a third party complaint against STS. Centrisys alleges claims against STS for: (1) indemnity, (2) contribution, and (3) declaratory relief.

STS argues that pursuant to the parties' contract, STS and Centrisys agreed to resolve any disputes in Australia. STS submits the "General Conditions" to the STS/Centrisys contract. STS argues that when STS and Centrisys entered into their contract, the "General Conditions" were part of the contract. In pertinent part, the "General Conditions" provide for forum selection in Victoria, Australia. The forum selection clause states in its entirety: "Any dispute between the parties shall be finally settled in accordance with laws of Victoria (the jurisdiction shall be the State of Victoria) or through arbitration at STS P/L's option." (Doc. 23, Whittington Decl. Exh. 1, ¶14.) Centrisys, however, disputes that the "General Conditions" was part of the parties' contract.[1] Centrisys offers evidence that the "General Conditions" was neither attached to any correspondence nor agreed to be part of the contract. Thus,

---

[1] The main individuals who provide evidentiary support for this motion are Christopher Mahoney, Ashley Whittington and Thomas Junod. Christopher Mahoney is the Sales Director for Centrysis Corporation. (Doc. 22, Mahoney Decl. ¶1.) Ashley Whittington is a shareholder and employee of STS who quoted the price and product to Centrisys for the sale of the centrifuge to Golden Valley. (Doc. 16, Whittington Decl. 1.) Thomas Junod is former employee of Centrisys who received the quote from Ashley Whittington for the Centrifuge. (Doc. 34, Junod Decl. ¶1.) He is the Centrisys employee who made the presentation to Golden Valley for the centrifuge, in which he incorporated the price quote he received from Whittington. (Doc. 34, Junod Decl. ¶¶2-3.) Mr. Whittington states that, "The general conditions of sale are part of every contract that STS AU enters into," and that "[He] personally included them with the contract when I sent it to Centrisys/Tom Junod." (Doc. 23, Whittington Decl. ¶12.) Mr. Mahoney, on the other hand, states that "Centrisys never consented to or approved the general conditions of sale, attached as Exhibit 1 to the Declaration of Ashley Whittington, previously filed herein as Document 23." (Doc. 30, Mahoney Decl. ¶2.) He states that he "personally looked through Centrisys' corporate records and could not locate any copy or record of the General Conditions submitted by Mr. Whittington." (Doc. 30, Mahoney Decl. ¶3.)

Centrisys' position is that it never agreed to the General Conditions and thereby never agreed to the forum selection clause. In short, Centrisys disputes the validity of the contract's clause naming Australia as the forum.

**ANALYSIS AND DISCUSSION**

**A. Motion to Enforce Forum Selection Clause**

A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3), but pleadings need not be accepted as true, and facts outside the pleadings may be considered. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996). Forum selection clauses are increasingly used in international business. When included in freely negotiated commercial contracts, they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S.Ct. 1522 (1991) (detailing economic advantages of forum selection clauses). The Ninth Circuit applies federal law to determine the enforceability of the forum selection clause. *Doe 1 v. AOL*, 552 F.3d at 1081. A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a "heavy burden" to establish a ground upon which we will conclude the clause is unenforceable. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009); and forum selection clauses should be honored "absent some compelling and countervailing reason." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. The burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589.

The court, however, must draw all reasonable inferences and resolve all factual conflicts in favor of party opposing enforcement of the clause. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–1139 (9th Cir. 2004) (the trial court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.") When the venue facts are inextricably intertwined with the merits of the action, resolution of the venue issue is usually

deferred until trial. *See Data Disc, Inc. v. Systems Technology Assocs., Inc.* 557 F.2d 1280, 1285 (9th Cir. 1977) (discussing personal jurisdiction motions).

**B. United Nations Convention on Contracts for the International Sale of Goods**

The disputes in this case arise out of an agreement for a sale of goods from an Australian party to a United States party. Such international sales contracts are ordinarily governed by a multilateral treaty, the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). *Chateau Des Charmes Wines LTD v. Sabate USA, Inc.*, 328 F.3d 528, 530 (9th Cir.2003) (stating that because the President submitted the CISG to the United States Senate, which ratified it, the CISG is valid and binding federal law). CISG applies to "contracts of sale of goods between parties whose places of business are in different States ... when the States are Contracting States." CISG, Art. 1(1)(a), 15 U.S.C.App., 52 Fed.Reg. 6262 (March 2, 1987). The CISG governs contracts for the sale of goods between parties whose places of business are in different nations, if the nations are Contracting States, unless the subject contract contains a choice-of-law provision. See CISG, Art. 1, 6.

The CISG governs only the formation of the contract of sale, and the rights and obligations of the seller and the buyer arising from such a contract. See CISG, Art. 4. Under the CISG, a contract may be oral or in writing. CISG, Art.11("A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses.") The CISG also addresses contract offer and acceptance. A proposal is an offer if it is sufficiently definite to "indicate[ ] the goods and expressly or implicitly fix[ ] or make[ ] provision for determining the quantity and the price," CISG, Art. 14. An offer is accepted if the offeree makes a "statement ... or other conduct ... indicating assent to an offer." CISG, Art. 18. "A contract is concluded at the moment when an acceptance of an offer becomes effective." CISG, Art. 23.

Here, STS and Centrisys acknowledge that the United States and Australia are signatories to the CISG. They agree that their contract is governed by the CISG. Thus, the CISG governs the substantive question of contract formation, including whether the forum selection clause was part of the parties' agreement.

**C. The Forum Selection Clause is Part of the Parties' Agreement**

The Court must first determine whether the forum selection clause was part of the contract,

pursuant to the CISG, taking into account its articles and any pertinent precedent.

Centrisys does not dispute that the parties had a contract for the sale of the centrifuge to Centrisys. Centrisys argues that the General Conditions to the contract was not part of the contract because Centrisys never consented to or approved the General Conditions of Sale. (Doc. 35, Supplemental Brief; Doc. 30, Mahoney Decl. ¶2.)

**1. The Offer**

STS' offer was contained in the February 29, 2008 sales quote to Thomas Junod, of Centrisys. In an email dated February 29, 2008, STS sent, and Centrisys received, a sales quote for the sale of the STS200 centrifuge to Centrisys. (Doc. 22, Mahoney Decl. ¶5, Exh. "A".) Under the CISG, this sales quote was sufficient to constitute an offer. A proposal is an offer if it is sufficiently definite to "indicate[ ] the goods and expressly or implicitly fix[ ] or make[ ] provision for determining the quantity and the price," CISG, Art. 14. The sales quote identified the goods for sale, the quantity of goods and the price. Thus, the offer for the sale of the centrifuge was contained in the February 29, 2008 emailed sales quote. Under the CISG, an adequate offer was made.

The same email to Centrisys included the General Conditions. According to Mr. Whittington, this email "attached" the General Conditions. The February 29, 2008 email consisted of the sales quote, with an attachment for the General Conditions, another attachment for the Warranty and another attachment for banking information. (See Doc. 33, Whittington Decl. Exh. 2.) The email to Thomas Junod contained four attachments. Thus, the email to Tom Junod not only included the sales quote to Tom Junod, but also attached the General Conditions in the same email. STS' offer included, not just the sales quote, but also the attachments to the email because all of the terms were offered at the same time. The General Conditions were part of STS' offer.

/////

**2. The Acceptance**

Under the CISG, conduct is adequate acceptance. "Conduct of the offeree indicating assent to an offer is an acceptance." CISG, Art. 18 (1). After receiving the sales quote, Centrisys then incorporated the STS quote into its presentation to Golden Valley. (Doc. 33, Whittington Decl. Exh. 5.) In a March 6, 2008 email correspondence between Tom Junod of Centrisys and Gerald Homolka,

of Golden Valley, Centrisys proposed the purchase of the centrifuge. Golden Valley ultimately entered into a contract on April 2, 2008 with Centrisys to purchase the centrifuge. (Doc. 1, Complaint ¶5.) Centrisys ordered the centrifuge and it was delivered to Golden Valley. Thus, the terms of STS' offer were accepted because Centrisys sold the centrifuge to Golden Valley. See CISG, Art. 19 ("the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods or payment of the price, without notice to the offeror, the acceptance is effective at the moment the act is performed.")

Centrisys argues that the mere receipt of the General Conditions is not enough to accept the conditions. Centrisys argues that it did not "accept" the terms of the General Conditions because it did not affirmatively agree to the General Conditions. (Doc. 35 Supplemental Brief p.3.) Centrisys argues that a unilateral attempt to impose the conditions is insufficient, citing *Chateau Des Charmes Wines, Ltd. v. Whitehall Specialties, Inc.*, 328 F.3d 528 (9th Cir. 2003).[2]

*Chateau Des Charmes Wines*, however, is distinguishable on its facts. In *Chateau Des Charmes Wines*, the forum selection clause was not part of the parties' agreement and the court addressed the issue of whether later invoices containing a forum selection clause modified an oral sales contract under the CISG. The parties in *Chateau Des Charmes Wines* had orally agreed to the goods, the quantity and the price, which created a binding contract under the CISC. The facts showed that the parties agreed, in two telephone calls, to a purchase of the goods. The parties agreed on payment and shipping terms, and no other terms were discussed in their telephone calls. Later, when the goods were shipped, the defendant included invoices that contained the forum selection clause. The Defendant argued that the clauses in the invoices became part of the binding agreement. The Ninth Circuit disagreed stating that the terms of the parties' oral agreement did not include the forum selection clause. "We reject the contention that because Sabaté France sent multiple invoices it created an agreement as to the proper forum with Chateau des Charmes. The parties agreed in two telephone calls to a purchase of corks to be shipped in

---

[2] Centrisys also argues that Thomas Junod did not have authority to accept the General Conditions. This is not a reasonable inference from the evidence before the Court. Mr. Junod was the negotiator between STS and Centrisys and between Centrisys and Golden Valley. He was the contact point for both STS and for Golden Valley, including presenting Centrisys' offer to Golden Valley. Golden Valley's Purchase Agreement, for the purchase of the centrifuge, was addressed to Mr. Junod. (Doc. 1, Complaint Exh. thereto.) In addition, he apparently signed the Purchase Agreement on behalf of Centrisys. *Id.*

eleven batches." *Chateau Des Charmes Wines*, 328 F.3d at 531. The parties' contract had been formed in the telephone calls and the court viewed the later invoices as an attempt to modify the contract. The court held that the agreement had not been modified by the later-sent invoices which contained the forum selection clause. The Ninth Circuit held the CISG does not allow for the modification of a contract by one party failing to object to the other party's unilateral attempt to modify its terms. Id. at 531. Thus, in *Chateau Des Charmes Wines*, the defendant sought to add, unilaterally, the forum selection clause after the parties had formed their agreement.

Similarly, in *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452 (D. Del. 2008), also cited by Centrisys, the parties negotiated a contract, but the parties did not mention the seller's Conditions of Sale during their negotiations. The buyer was allegedly familiar with them from past dealings. Pursuant to the agreement, the buyer faxed the seller a purchase order, and the seller sent an order confirmation before delivery that referred to its Conditions of Sale, but did not contain them. The seller sent the buyer an invoice after shipment that contained its Conditions of Sale, including a forum selection clause. The court held that the parties had formed a completed contract when the companies reached an agreement on the price, quantity, and freight terms. The contract, at formation, did not include a forum selection clause.

Here, however, the General Conditions accompanied the sales quote. The General Conditions were attached, contemporaneously, with the sales quote and with other sale information, such as warranty information and banking information, which were included in the email. Unlike *Chateau* and *Solae*, the General Conditions were not sought to be imposed after the contract had been formed. The General Conditions were part of the offer. Indeed, it is without dispute that Centrisys reviewed at least one other attachment in the same email - the warranty. (See e.g., Doc. 33, Whittington Decl. ¶16 and Exh. 2.) Throughout the proceedings in this Court, Centrisys has alerted the Court to the warranty provided by STS as a means of establishing STS' "minimum contacts" with California. (See Doc. 20, Centrisys opposition to Motion to Dismiss p. 9.) Thus, some of the attachments to the February 29, 2008 email were reviewed by Centrisys. *See CFMOTO Powersports Inc. v. NNR Global Logistics USA, Inc.*, 2009 WL 4730330, 3 (D.Minn. 2009) (Although Mirman now asserts that he did not receive any terms and conditions when he signed the Customs POA, that after-the-fact assertion directly contradicts the

evidence in the record.)

Pursuant to the CISG, acceptance does not require a signature or formalistic adoption of the offered terms. Pursuant to Art. 18(3), "the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods or payment of the price, without notice to the offeror, the acceptance is effective at the moment the act is performed." The evidence establishes that at the time STS sent its sales quote to Centrisys, it contemporaneously sent its General Conditions as part of the attachments. By adopting the terms of the sales quote, Centrisys accepted the terms upon which the centrifuge had been offered, including the General Conditions. Thus, Centrisys accepted the General Conditions.

**D. Policy Reasons for not Enforcing the Forum Selection Clause**

While the Supreme Court in *Bremen* created a presumption in favor of enforcing forum selection clauses, *Bremen* also recognized three reasons that would make enforcement of a forum selection clause unreasonable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; and (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Richards v. Lloyd's of London*, 1294 (9th Cir.1998) (citing and quoting *Bremen*, 407 U.S. at 12-13, 15, 18, 92 S.Ct. 1907) (internal quotation marks omitted).

Here, Centrisys does not argue that it was the victim of either fraud or overreaching. The parties negotiated their agreement at arms length. Likewise, Centrisys does not argue the enforcement of the forum selection clause would violate public policy.

Centrisys argues that enforcement of the forum selection clause would deny Centrisys its day in Court. Centrisys argues that to prove its claims of indemnity and contribution, Centrisys "would need to call upon Golden Valley employees who are not subject to the jurisdiction of Australian courts." (Doc. 35, Supplemental Brief p.9.) In addition, Centrisys would be forced to twice litigate whether the STS centrifuge was nonconforming/defective.

Where inconvenience of the forum was foreseeable at the time of contracting, then "the party seeking to escape his contract" must show "that trial in the contractual forum will be so **gravely difficult and inconvenient** that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18 (emphasis added); see *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir.

2004) (courts are to consider a party's financial ability to litigate in the forum selected by the contract when determining the reasonableness of enforcing a forum selection clause.) The cost of litigation or the fact that a foreign forum poses inconvenience does not prevent enforcement of a forum-selection clause. *Fireman's Fund Insurance Company v. M.V. DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir.1997).

Here, the Court acknowledges that Centrisys will be inconvenienced by the forum selection clause. The witnesses that Centrisys may need from Golden Valley to prove the centrifuge was nonconforming are located in California. The forum is distant and whether the centrifuge is conforming may need to be tried a second time. Nonetheless, these inconveniences are not shown to be "so gravely difficult and inconvenient" as to deny Centrisys its day in court. For instance, there may be other witnesses within Centrisys or experts who could provide sufficient testimony, and some or all of the evidence may be stipulated, the product of a video deposition, or subject to judicial notice. If Centrisys prevails against Golden Valley, it may be unnecessary to pursue the matter further. Centrisys simply argues that it will be inconvenienced by not having all witnesses available and may be forced to re-litigate the issues again. These arguments are not sufficient to carry the burden that the enforcement of the forum selection clause is unreasonable.

**E. Paragraph 10 of the General Conditions re "Product Liability"**

Centrisys argues that if the General Conditions apply, then paragraph 10 "Product Liability" controls the choice of forum. Centrisys argues that if someone other than STS and Centrisys brings a claim for damages based on a defective product theory of liability, both STS and Centrisys are required to make themselves available to the forum selected by the third party. (Doc. 35, Supplemental Brief p. 9-10.) Centrisys argues that since Golden Valley sued Centrisys for a product defect, STS is required to defend in California.

/////

Paragraph 10 of the General Conditions states:

> 10. Product Liability
> STS P/L shall be liable for personal injury only if it is proved that such injury was caused by reason of errors or omission on the part of STS P/L or others for whom STS P/L is responsible. Damages for person injury shall never exceed the level of damages in force according to the stipulations of Australian law. . . .

> To the extend that STS P/L might incur product liability towards any third party, the Purchaser shall indemnify STS P/L for liability exceeding the limitations in these General Conditions. If a claim for damages is lodged by a third party according to this clause against one of the parties, this party shall forthwith inform the other of such claim in writing. STS P/L and the Purchaser shall be mutually obliged to let themselves be summoned to the court examining claims for damages lodged against one of them on the basis of a damage allegedly caused by the goods delivered.

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Doe 1 v. AOL*, 552 F.3d at 1081.; see also *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir.1999). The common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." *Doe 1 v. AOL*, 552 F.3d at 1081.

Here, Paragraph 10 does not apply to this action. Paragraph 10 involves the parties' obligations for claims from third parties for personal injuries for "product liability." A "product liability action" is defined under California law, as "any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty." Cal.Civ.Code § 1714.45(c).[3] Neither Centrisys' action nor Golden Valley's action involve an action for injury or death caused by the product. The action involves damages for failure of the product to perform according to specifications and the warranty. Accordingly, the action does not involve a "product liability." Paragraph 10 of the General Conditions does not apply to this action.

**F. Equitable Contribution and Equitable Indemnity**

Centrisys argues that the third party complaint is not premised on any contractual obligation owed Centrisys by STS arising out of the parties' agreement. Centrisys argues that it claims equitable indemnity and contribution, which are not claims "on the contract." (Doc. 35, Supplemental Brief p.3.) Since its claims are not "on the contract," the forum selection clause is not invoked.

"[A] party to a joint, or joint and several obligation who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Cal. Civ.Code

[3] The Court does not make a finding that California law applies in this case. The Court notes that the General Conditions contain a choice-of-law provision in which Australian law is chosen. Australian law has not been provided to the Court. For purposes of the "product liability" issue only, the Court applies California law.

§ 1432; see *HCC Life Ins. Co. v. Managed Ben. Adm'rs LLC*, 2008 WL 2439665, 4 (E.D.Cal. 2008). An equitable contribution claim arises not from contract but from equity. *Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*, 158 Cal.App.4th 1061, 1066, 70 Cal.Rptr.3d 605 (2008). The right to equitable contribution does not require a preexisting contractual relationship. *Crowley*, 158 Cal.App.4th at 1066, 70 Cal.Rptr.3d 605. The doctrine of equitable indemnification permits liability to be apportioned based on the relative culpability of wrongdoers. *Miller v. Ellis*, 103 Cal.App.4th 373, 379, 126 Cal.Rptr.2d 667 (2002). Equitable indemnification "is premised upon the principle that ... joint tortfeasors should share the burden of discharging the legal obligation to the injured party for the damages caused by their mutual negligence." *Id.* at 379-80, 126 Cal.Rptr.2d 667 (emphasis added). As a condition of equitable indemnity, there must be some basis for tort liability against the proposed indemnitor, usually involving breach of a duty owed to the plaintiff. *Stonegate Homeowners Ass'n v. Staben*, 144 Cal.App.4th 740, 751, 50 Cal.Rptr.3d 709 (2nd Dist.2006).

The Court need not reach Centrisys' argument, because the forum selection clause is broadly worded. The clause states, "**[a]ny dispute** between the parties shall be finally settled . . ." (Doc. 23, Whittington Decl. Exh. 1, ¶14.) The clause is not limited to any dispute arising solely from the contract. The clause pertains to "any dispute." The parties here are involved in a contractual relationship. Their dispute arises from the contract, because 'but for" their contractual relationship, there would not be a dispute. Without the dispute, the parties would not need to select a forum. Accordingly, no matter what terminology Centrisys applies to the dispute, it arises out of the parties' contractual relationship. Thus, forum selection clause is invoked.

## CONCLUSION

For the foregoing reasons, the motion to dismiss for change of venue by Third Party Defendant Separator Technology Solutions PTY Ltd. is GRANTED.

IT IS SO ORDERED.

**Dated: January 21, 2010** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE